## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**

LEONARDO ACEVEDO-VÁZQUEZ [1],
JOHN SANTOS-VÁZQUEZ [2],

    **Defendants.**

**Criminal No.** 16-642 (FAB)

## OPINION AND ORDER

BESOSA, District Judge.

    Defendants Leonardo Acevedo-Vázquez ("Acevedo") and John Santos-Vázquez ("Santos") move to suppress evidence pursuant to the Fourth Amendment of the United States Constitution. (Docket No. 34.) The United States opposed the defendants' joint motion. (Docket Nos. 47 and 49.) On January 13, 2017, the Court referred the defendants' joint motion to Magistrate Judge Camille Vélez-Rivé for a Report and Recommendation ("R & R"). (Docket Nos. 36 and 37.)

    The magistrate judge held a two-day suppression hearing on September 5, 2017 and February 13, 2018. (Docket Nos. 74 and 83.) San Juan Municipal Police Officers Fernán Méndez-Sosa ("Méndez"), José Vázquez-González ("Vázquez"), and Sergeant José Colón-

Rodríguez ("Colón") testified at the suppression hearing. (Docket Nos. 90 and 93.) Acevedo and Santos did not testify.

The United States and the defendants submitted post-hearing memoranda of law on June 16, 2018 and July 13, 2018, respectively. (Docket Nos. 114 and 117.) The magistrate judge issued an R & R, recommending that the Court deny the defendants' motion to suppress. (Docket No. 121.) Both defendants filed timely objections to the R & R. (Docket Nos. 129 and 130.)[1]

For the reasons set forth below, the Court **ADOPTS IN FULL** the magistrate judge's R & R, and **DENIES** Acevedo's and Santos' joint motion to suppress.

---

[1] Acevedo and Santos filed their joint motion to suppress on January 13, 2017. (Docket No. 34.) The magistrate judge initially set the suppression hearing for July 24, 2017, but subsequently granted the parties leave to conduct plea negotiations. (Docket Nos. 50, 52 and 57.) The negotiations resulted in plea agreements between the United States and both defendants. (Docket No. 58.) The Court presided over two change of plea hearings. (Docket Nos. 66 and 69.) The defendants, however, ultimately rejected the plea agreement. (Docket Nos. 66 and 69.) Acevedo and Santos renewed their motion to suppress. Id. The suppression hearing commenced on September 5, 2017, the day before Hurricane Irma made landfall in Puerto Rico. (Docket No. 74.) The subsequent passage of Hurricane María on September 20, 2017 resulted in the loss of electrical power, destroyed communication towers, and caused a lack of food, fuel, and water throughout Puerto Rico. Consequently, the United States Marshals Service relocated inmates housed at the Metropolitan Detention Center in Guaynabo, Puerto Rico to the Southern District of Mississippi pursuant to the Federal Judiciary Emergency Special Sessions Act of 2005, Pub. L. No 109-63, 119 Stat. 1993 (2005). See Notice from the Clerk No. 17-12, Transfer of Federal Detainees Outside of District of Puerto Rico and Suspension of Criminal and Civil Trials Until November 6, 2017. The suppression hearing did not continue until February 13, 2018. (Docket No. 83.)

## I.   Background

On October 10, 2016, a grand jury returned an indictment charging Acevedo and Santos with carjacking and use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 2119(1) and (2), and 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2), respectively.  (Docket No. 13.)  The grand jury also charged Acevedo with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Id. Acevedo and Santos contend that evidence obtained in connection with their arrest is the fruit of an illegal search and seizure. (Docket No. 34 at p. 7.)

### A.   The Food Truck Robbery

From October 8 to 9, 2017, Officer Méndez worked a twelve-hour shift beginning at 5:00 p.m.  (Docket No. 93 at p. 28.)  According to Officer Méndez, a woman reported a crime to the desk sergeant at police headquarters.  Id. at p. 6.  The woman claimed that two individuals in a copper-colored SUV robbed her in front of a food truck.  Id.  She provided the desk sergeant with a description of the two individuals, and the last three digits of the license plate associated with the copper-colored SUV.  Id. at p. 7.  The desk sergeant relayed this information to other law enforcement officers through the police radio.  Id. at p. 24.

Subsequently, Officer Méndez patrolled a high-crime area in Río Piedras, Puerto Rico.  Id. at p. 8.

## B.    The Defendants' Arrest

While on patrol, Officer Méndez observed a parked, unoccupied vehicle matching the description of the SUV involved in the food truck robbery.  Id. at p. 8.  Police dispatch informed Officer Méndez that that the license plate of the SUV belonged to a vehicle that "was robbed in a carjacking in the Bayamón area." Id. at p. 9.[2]  Officer Méndez notified his supervisor, and touched the hood of the SUV.  Id. at p. 10.  The hood was hot.  Id.  Officer Méndez illuminated the inside of the SUV with his flashlight, observing a bullet inside the vehicle.  Id. at p. 12.

Officer Méndez shared this information with police dispatch.  (Docket No. 90 at pp. 6 and 69.)  Officer Vázquez and Sergeant Colón received this information over the police radio at approximately 2:30 a.m. of October 9, 2018, and responded to the location of the SUV.  (Docket No. 90 at pp. 6 and 69.)  Police officers established a perimeter around the vehicle.  Id. at p. 8.

---

[2] Acevedo argues that the United States "surreptitiously inserted [the carjacking allegations] into its post hearing memorandum." (Docket No. 130 at p. 7; citing Docket No. 114 at p. 2.)  The defendants' joint motion to suppress, however, also refers to the alleged carjacking.  (Docket No. 34 at p. 2.) Indeed, the United States, the defendants, and the magistrate judge allude to the alleged carjacking.  See Docket Nos. 34 and 114.   The Court relies exclusively on evidence presented at the suppression hearing in evaluating Acevedo's and Santos' joint motion to suppress.   The specific allegations regarding the carjacking are immaterial to the Courts' Fourth Amendment analysis.

While Sergeant Colón patrolled the surrounding area, he received a phone call from former police officer Roberto Ortiz ("Ortiz"). Id. at pp. 70 and 84. Sergeant Colón once supervised Ortiz in the tactical unit when Ortiz served as a police officer. Id. At the time of the defendants' arrest, Ortiz worked as a security guard for the El Coquí nightclub near the location of the SUV. Id. According to Sergeant Colón, Ortiz "described the [skin tone and] clothes that the two individuals were wearing because [Ortiz] was working in security at the place where the individuals were." Id. at pp. 71 and 117. An unidentified woman informed Ortiz that she observed "individuals getting out of the SUV." Id. at p. 95. Ortiz informed Sergeant Colón that the two individuals "were walking towards the Gándara Avenue." Id. at p. 70.

Sergeant Colón located Acevedo and Santos on Gándara Avenue. Id. at p. 71. Both defendants matched the descriptions provided by Ortiz. Id. Sergeant Colón requested assistance, followed the defendants, and transmitted radio updates regarding his location. Id. at p. 72.

Sergeant Colón notified police dispatch that Acevedo and Santos were walking in the direction of a public plaza referred to as Zombie Square. Id. at p. 10. Officer Vázquez and his partner, Sargent Hernández, drove to the exit of a stairway leading out of Zombie Square "in case [Acevedo and Santos] were going to flee and

to be able to intercept them." Id. Sergeant Colón exited his patrol car when Acevedo and Santos entered Zombie Square. Id. at p. 72. Acevedo and Santos walked faster despite Sergeant Colón's repeated requests to stop. Id. at p. 73. As Sergeant Colón pursued the defendants down the stairway, he heard a loud sound as though "a firearm was thrown to a wall." Id. at pp. 74—76.[3]

At the exit of the stairway, Officer Vázquez encountered Acevedo and Santos "face-to-face." Id. at p. 10. Officer Vázquez perceived that the defendants "were about to flee." Id. at p. 10. Acevedo and Santos disobeyed Officer Vázquez's repeated requests to "hit to the ground." Id. Consequently, Officer Vázquez and other police officers present at the location placed Acevedo and Santos against a vehicle. Id. Approximately five seconds later, Sergeant Colón exited the stairway. Id. at p. 11. Officer Vázquez stood watch over Acevedo and Santos while Sergeant Colón searched the area. Id. at pp. 11 and 76. According to Sergeant Colón, few people were at Zombie Square at this time, and no people were present in the area where Officer Vázquez detained the defendants. Id. at pp. 199-120. Sergeant Colón recovered bullets on a sidewalk and a revolver in "a gardening box in front of a residence"

---

[3] Sergeant Colón has nineteen years of experience as a law enforcement officer. (Docket No. 90 at p. 68.)

adjacent to the stairway.  Id. at p. 77.  Officer Vázquez arrested

Acevedo and Santos at 3:30 a.m. on October 9, 2016.  Id. at p. 11.

## II.  Standard of Review

A district court may refer a motion to suppress evidence in

a criminal case to a magistrate judge for a report and

recommendation.  28 U.S.C. § 636(b)(1)(B); Loc. R. 72(a)(6).  Any

party may file written objections to the R & R.  Id.; Loc. R.

72(d).  The Court conducts a *de novo* review of those portions of

the report to which specific objections are made, and is free to

"accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  Id.

## III. Factual Findings

The magistrate judge based the R & R on the "credible evidence

presented during the suppression hearing and after assessing the

credibility of the witnesses."  (Docket No. 121 at p. 15.)  The

Court thoroughly reviewed the suppression hearing testimony, and

is satisfied that the record amply supports the magistrate judge's

factual findings.  (Docket Nos. 90 and 93.)

Acevedo contends that the magistrate judge set forth an

"incomplete and inaccurate" rendition of Sergeant Colón's

testimony.  (Docket No. 130 at p. 7.)  Acevedo predominantly

challenges the veracity of Sergeant Colón's communications with

Ortiz.  Id.

FBI Task Force Officer ("TFO") Samuel Bermúdez ("Bermúdez") interviewed Sergeant Colón following the defendants' arrest. Id. at p. 85. During his interview with TFO Bermúdez, Sergeant Colón stated that he "met face to face with Roberto Ortiz." Id. at p. 93. According to Acevedo, "[a]t no point during direct examination does Sergeant Colón testify that he had an in-person conversation with Ortiz where Ortiz states he actually observed the suspects exiting the Cadillac." Id. at p. 8. Sergeant Colón testified at the suppression hearing that he:

> received a call in [his] cell phone from a former fellow officer that [he] had supervised in the past, [and] . . . located the two individuals that [Ortiz] had told him about over the phone . . . got out of the patrol car to follow up on [the defendants] and intervene with them, based on the description provided over the phone to [him].

Id. at pp. 70—73.

On cross-examination Sergeant Colón stated, however, that he spoke to Ortiz both on the phone **and** in-person, that he has "always sustained that." Id. at p. 94 (emphasis added). The Court rejects Acevedo's attempt to undermine Sergeant Colón's testimony based on another witness's recollection of what Sergeant Colon told him.

Consequently, the Court is unpersuaded that the magistrate judge mistakenly found Sergeant Colon's testimony credible.[4]

## IV.  The Magistrate Judge's Legal Conclusions

The linchpin of the defendants' motion to suppress is that police officers executed a warrantless arrest without probable cause by relying on "an anonymous tip with the description of three (3) individuals [who] were allegedly seen exiting a reported stolen vehicle (Escalade SUV)." Id.  Acevedo and Santos argue that police officers based the defendants' arrest on an "uncorroborated anonymous tip" in violation of the Fourth Amendment.  (Docket No. 34 at p. 8.)

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures."  U.S. Const. amend. IV.  This prohibition is enforced through the exclusionary rule, pursuant to which evidence seized in violation of a defendant's Fourth Amendment rights cannot be used against the defendant at trial.  Herring v. United States, 555 U.S. 135, 139 (2009).  "[T]he exclusionary rule reaches not only primary evidence

---

[4] Santos also objects to the factual findings set forth in the R & R.  (Docket No. 129 at p. 2.)  According to Santos, "[the defendants] discussed the alleged facts comparing them with the evidence to demonstrate the numerous inconsistencies in the evidence" in their memorandum of law submitted before the magistrate judge issued the R & R. (Id.; citing Docket No. 117 at pp. 11–13.)  Santos reiterates arguments predating the R & R without challenging specific findings of fact.  Consequently, the Court need not address Santos' blanket factual objection to the R & R.

obtained as a direct result of an illegal search or seizure, . . . but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" Segura v. United States, 468 U.S. 796, 804 (1984) (internal citations omitted). Because no violation of the Fourth Amendment occurred in connection with the defendants' detention and arrest, the magistrate judge concluded that suppression is unwarranted. (Docket No. 121.)

### A.  Reasonable Suspicion Regarding the Terry Stop

Acevedo and Santos maintain that they "were not seized but rather they were illegally arrested for investigatory purposes." (Docket No. 34 at p. 6.) Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), a law enforcement officer may "briefly detain an individual for questioning if the officer 'reasonably suspects that the person apprehended is committing or has committed a crime.'" United States v. Camacho, 661 F.3d 718, 726 (1st Cir. 2011) (quoting Arizona v. Johnson, 555 U.S. 323 (2009)). Law enforcement officers are entitled to perform pat-downs during a valid Terry stop when they have "some articulable, reasonable suspicion that the persons stopped may be dangerous." See United States v. Tiru-Plaza, 766 F.3d 111, 115 (1st Cir. 2014) (citation omitted); see also United States v. Pontoo, 666 F.3d 20, 30 (1st Cir. 2011) ("In a world fraught with peril, officer safety must have a place at the forefront of police work. It follows logically

that a pat-frisk may accompany an investigatory stop whenever an
officer has reason to believe that the suspect is armed and
dangerous.") (internal quotation marks and citation omitted).

        In determining whether a detention constitutes a valid
Terry stop, the Court must consider whether (1) reasonable
suspicion justified the stop at its inception, and (2) whether the
actions of law enforcement officers during the stop were reasonably
related in scope to the circumstances justifying the stop.  See
Tiru-Plaza, 766 F.3d at 119.  The Court's inquiry is guided by a
"totality of the circumstances," and is based on objective
criteria, not the officer's subjective motives.  United States v.
Romain, 393 F.3d 63, 71 (1st Cir. 2004).  As the First Circuit
Court of Appeals has observed, "reasonable suspicion is more a
concept than a constant: it deals with degrees of likelihood, not
with certainties or near certainties . . . [and] makes due
allowance for police officers to draw upon their experience and
arrive at inferences and deductions that may well elude an
untrained person."  United States v. Arnott, 758 F.3d 40, 44 (1st
Cir. 2014) (internal quotation marks and citation omitted);
Ruidiaz, 529 F.3d at 29 ("[R]easonableness requires a practical,
commonsense determination – a determination that entails a
measurable degree of deference to the perceptions of experienced
law enforcement officers.") (internal citations omitted).

The magistrate judge concluded that polices officers "had reasonable suspicion to stop both Defendants based on the collective knowledge they had." (Docket No. 121 at p. 15.) The R & R summarized the following information received by Sergeant Colón prior to approaching Acevedo and Santos:

1.  Officer Mendéz discovered the Ford [*sic*] Escalade, it matched the description from the food truck robbery, its hood was warm, the plates came back for a carjacked vehicle that he had seen bullets on the passenger side.

2.  [Former] Officer Ortiz had seen the individuals getting out of a Cadillac Escalade before going inside "El Coquí."

3.  The individuals were walking towards Gándara Avenue after they left "El Coquí."

4.  A patron at "El Coquí" had told Ortiz that the individuals got off the Cadillac Escalade.

5.  Ortiz described to Sgt. Colón what the suspects were wearing and their skin-tone.

6.  The area was a high crime area and it was late at night.

(Docket No. 121 at p. 17.) Acevedo and Santos ignored Sergeant Colón's request to stop. Id. at p. 17. Moreover, Sergeant Colón heard what he perceived to be a firearm hitting a wall. Id. In sum, the "totality of the circumstances and based on the personal observations of the law enforcement officers that night, they had a reasonable, articulable suspicion about Defendant Acevedo's and Santos' involvement in some criminal activity." Id.

The magistrate judge dismissed Acevedo's and Santos' characterization of Ortiz's tip as unreliable. (Docket No. 117 at p. 8.) The Supreme Court and the First Circuit Court of Appeals recognize that "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Florida v. J.L., 529 U.S. 266, 270 (2000) (internal quotation omitted); see United States v. Avilés-Vega, 783 F.3d 69, 74 (1st Cir. 2015) ("We note that there is more than one way to demonstrate reasonable suspicion based on an anonymous tip, and that we much take into account the totality of the circumstances — the whole picture.") (internal citation and quotation marks committed).

As a preliminary matter, the magistrate judge established that the tip in this case is not anonymous. (Docket No. 121 at p. 20.) Sergeant Colón once supervised former police officer Ortiz. Id. at p. 20. Anonymous tips are distinguishable from tips originating from individuals known to police. See United States v. Monteiro, 447 F.3d 39, 44 (1st Cir. 2006). In Adams v. Williams, the Supreme Court held that a tip from a "person known to [the police officer]" that a man "seated in a nearby vehicle [in a high-crime area] was carrying narcotics and had a gun at his waist" substantiated the ensuing Terry stop. 407 U.S. 143 (1972); see J.L., 529 U.S. at 270, (holding that a known informant's

"reputation can be assessed and . . . can be held responsible if her allegations turn out to be fabricated"). "Although an anonymous tip, standing alone, may typically fail to create reasonable suspicion, an anonymous tip that is corroborated in some measure by actual facts or by other sources may be enough." Wood v. Clemons, 89 F.3d 922, 929 (1st Cir. 1996).

The magistrate judge presumed that even if the tip were anonymous, sufficient corroboration rendered the tip reliable. (Docket No. 121 at p. 18.) According to the R & R, "the [Terry] stop in this case was not only based on the corroborated information received in the tip but on the observations of the officers at the scene." Id. at p. 22.

**B.    Probable Cause to Arrest the Defendants**

The magistrate judge addressed the defendants' contention that the San Juan Municipal Police Officers arrested Acevedo and Santos without probable cause. The Fourth Amendment's prohibition against unreasonable seizures requires that arrests be based on probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). "Probable cause for an arrest 'exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators.'" United States v. Brown, 500 F.3d 48, 56 (1st Cir. 2007) (quoting

Acosta v. Ames Dep't. Stores, Inc., 386 F.3d 5, 9 (1st Cir. 2004)).
The probable cause analysis focuses on the collective knowledge of
all officers at the time of the arrest and considers the totality
of the circumstances.  See United States v. Jones, 432 F.3d 34, 41
(1st Cir. 2005); United States v. Paradis, 802 F.2d 553, 557 (1st
Cir. 1986).  Officers' probable cause determination need not be
"ironclad, or even highly probable.  Their conclusion that probable
cause  exists  need  only  be  reasonable."   United  States  v.
Winchenbach, 197 F.3d 548, 555-56 (1st Cir. 1999); accord Valente
v. Wallace, 332 F.3d 30, 32 (1st Cir. 2003) ("[C]entrally, the
mercurial phrase 'probable cause' means a reasonable likelihood.").

          The  magistrate  judge  concluded  that  the  following
circumstances  established  probable  cause:   (1)  the  defendants
matched the description of the individuals observed exiting the
Escalade, (2) a check of the Escalade's license plate indicated
that the vehicle was involved in a carjacking, (3) police officers
observed bullets in the Escalade, (4) the defendants repeatedly
ignored the police officer's requests to stop, (5) Sergeant Colón
heard a loud sound as he pursued the defendants, and (6) Sergeant
Colón recovered bullets and a revolver along the path that the
defendants traveled.  (Docket No. 121 at pp. 22—26.)  Because no
violation of the Fourth Amendment occurred, the magistrate judge
reasoned that suppression is inappropriate.

**C.   Legal Objections to the Report and Recommendation**

Acevedo and Santos set forth two legal objections to the R & R.   First, the defendants argue that the "Magistrate Judge can't find that [t]he officers had collective knowledge of the suspect's [*sic*] description when it was never provided to the Court."   (Docket No. 129 at p. 2; see Docket No. 130 at p. 10.) Second, Acevedo and Santos contend that police officers lacked reasonable suspicion and probable cause.   (Docket No. 129 at pp. 4–8; Docket No. 130 at pp. 10–13.)   The Court addresses each of these arguments in turn.

**1.   Collective Knowledge**

The defendants ground their objection regarding the purported absence of collective knowledge on a false premise:  that the police officers never received a description of the defendants. (Docket No. 129 at p. 2.)   The magistrate judge found that "[t]he collective information known to officers was sufficient to warrant a reasonably prudent person in believing Defendants had committed an offense."   (Docket No. 121 at p. 25.)   Investigative stops, such as the Terry stop conducted by Officer Vázquez, "generally occur in a dynamic environment marked by the potential for violence."   United States v. Cook, 277 F.3d 82, 86 (1st Cir. 2002). The First Circuit Court of Appeals has repeatedly held that "where law enforcement officers are jointly involved in an investigative

stop, the knowledge of each officer should be imputed to others jointly involved in executing the stop." Id. (citation omitted); see United States v. Pardue, 385 F.3d 101, 106—07 (1st Cir. 2004) ("It is enough that the collective knowledge and information of all the officers involved establishes probable cause for the arrest.") (quoting United States v. Paradis, 802 F.2d 553, 557 (1st Cir. 1996)).

Santos asserts that the San Juan Municipal Police Officers lacked collective knowledge, because the United States failed to introduce evidence regarding the defendants' description. (Docket No. 129 at p. 2.) The Court disagrees.

Ortiz provided police officers with a description of Acevedo and Santos. Sergeant Colón testified that Ortiz described the defendants' clothing and skin tone. (Docket No. 90

at p. 71.)[5]   The suppression hearing record is replete with testimony establishing that police officers communicated extensively over the radio on October 9, 2016.   See e.g., Docket No. 90 at pp. 6, 9, 10, 13, 32, 44 and 69; Docket No. 93 at pp. 9, 23, 24, 34 and 36.)   Accordingly, the Court rejects Santos' argument that the San Juan Municipal Police Officers lacked collective knowledge.

## 2.   Reasonable Suspicion and Probable Cause

The defendants' analysis regarding reasonable suspicion is flawed.   Acevedo and Santos evaluate the tip provided by Ortiz in a vacuum.   They assert that "[a] tip two individuals are associated with a stolen vehicle does not give the police *carte blanche* to begin arresting or detaining anyone and everyone."

_____

[5] Defendant Acevedo and Santos contend that the United States "should have asked the agent what was description of the suspects in order for the court to have the description and evaluate its reliability and accuracy, however, the government failed to do so." (Docket No. 117 at p. 4.)  At the suppression hearing, Sergeant Colón stated that he drove "to Gándara Avenue to corroborate my fellow [former] officer's information and **[Ortiz] described the clothes the two individuals were wearing** because he was working in security at the place where the individuals were." (Docket No. 90 at p. 71)(emphasis added).  Defense counsel raised a hearsay objection.   Id.   The United States responded, contending that:

> [The testimony] is not being brought in to prove the truth of what the defendant was wearing.   It's being brought to show that the officer received a description from his former colleague . . . We're not trying to get to what the defendants were wearing that night, just whether or not he had a description and he can testify as to whether or not he had a description."

Id. at p. 71.   The magistrate overruled the defendants' objection.   Id. Accordingly, at the suppression hearing Sergeant Colón testified that Ortiz described the defendants' clothing and skin tone, but did not disclose the specific details of Ortiz's tip.

(Docket No. 130 at p. 11; see Docket No. 129 at p. 4.)  In sum,

the defendants describe the tip received by Sergeant Colón as a

"vague description . . . insufficient to establish reasonably

suspicion, let alone probable cause." (Docket No. 130 at p. 12.)

Acevedo and Santos neglect to address the relevant

circumstances preceding the defendants' detention. (Docket

No. 130 at p. 12.)  Acevedo inserts a condensed summary of the

"facts justifying the seizure," but omitted the following facts

from his analysis:  (1) Officer Méndez observed bullets inside the

copper-colored SUV, (2) the SUV that Officer Méndez observed was

reported as stolen by means of a carjacking, (3) the defendants

failed to comply with the police officer's instructions to stop,

and (4) Sergeant Colón recovered bullets and a firearm from the

path traveled by the defendants.  Id.

A motion to suppress cannot rest on a narrow

evaluation of the circumstances.  See United States v. Arthur, 764

F.3d 92, 96—97 (1st Cir. 2014) (In reviewing the justifications

for a Terry stop, "[t]he factual mosaic 'must be evaluated through

a broad-based consideration of all the attended circumstances")

(internal citation and quotation omitted).  The circumstances

absent from the defendants' Fourth Amendment analysis are

significant, and demonstrate that police officers possessed both

reasonable suspicion to detain the defendants, and probable cause
to arrest them.

Defendants cite precedent in which courts
suppressed evidence because uncorroborated, generic tips failed to
establish reasonable suspicion. Docket No. 130 at p. 13; citing
United States v. Brown, 448 F.3d 239, 247-48 (3rd Cir. 2006)
(generic description of two African-American males was
insufficient to provide a basis for officer's stop). Officer
Vázquez and Sergeant Colón possessed much more information,
however, than a generic tip.

The circumstances in this case are analogous to the
Third Circuit Court of Appeals' decision in United States v.
Foster, 891 F.3d 93. (3rd Cir. 2018). Barbershop employees
observed that "two black males" behaved suspiciously, and provided
police officers with a photo of the individuals' vehicle. Id.
at 99. The police database confirmed that the vehicle had been
reported in an armed robbery. Id. Police officers received an e-
mail with this information, located the vehicle, and arrested one
of the suspects. Id. While searching for the second suspect, a
police officer "saw a black man, later identified as [the
defendant], walking along a road." Id. at 100. The police officer
radioed police dispatch to inquire whether "anybody had a better
description to work with because, at that time, he knew simply

that he was looking for a black male who had fled on foot." Id.
Police dispatch had no other information. Id. The police officer
placed the second suspect in his vehicle, and returned to the
barbershop for identification. Id. at 101. The Third Circuit
Court of Appeals agreed with the trial court that "the totality of
the circumstances known to [police officers], combined with [the
police officer's] experience . . ., provided him with reasonable,
articulate suspicion to stop [the defendant]." Id. at 103.

      Like the police officers in Fisher, Officer Vázquez
and Sergeant Colón received information that Acevedo and Santos
were "dark skinned" and wore particular clothing. (Docket No. 90
at pp. 71 and 114.) In addition to this information, San Juan
Municipal Police Officers knew that the SUV that Officer Méndez
located was involved in a both the Bayamón carjacking and the food
truck robbery. (Docket Nos. 90 and 93.) The Court is cognizant
that "[u]biquitous or vague physical descriptions or general
locations, without more, are not enough to support reasonably
suspicion." United States v. Arthur, 764 F.3d 92, 99 (1st Cir.
2014) (finding that "a reliable, though generic, description of
the number of suspects and their race, gender, clothing, and
approximate location as well as information about the direction in
which they were heading," proximity to the crime scene and absence
of pedestrians "suffice to give rise to a reasonable suspicion

that the appellant and his companions were the robbers"). The totality of the circumstances in this case, however, demonstrate that the San Juan Municipal Police Officers had "a reasonable, articulable, suspicion of [the defendants'] involvement in some criminal activity." United States v. Ruidaz, 529 F.3d 25, 28 (1st Cir. 2008). After police officers recovered the firearm and bullets, Officer Vázquez certainly had probable cause to arrest Acevedo and Santos.

## V. Conclusion

Having made an independent examination of the entire record in this case, including the defendants' objections, the Court **ADOPTS IN FULL** the magistrate judge's findings and recommendations. Accordingly, Acevedo's and Santos' joint motion to suppress is **DENIED**. (Docket No. 34.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, September 27, 2018.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE